IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SHANE C.,

                        Plaintiff,

            v.                                              Civil Action No.
                                                            1:20-cv-0895 (DEP)

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                        Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

DENNIS KENNY LAW                          JOSEPHINE GOTTESMAN, ESQ.
288 North Plank Road
Newburgh, NY 12550

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                    HEATHER M. LACOUNT, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


DECISION AND ORDER[1]

_____

[1]      This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that he was not disabled at the relevant times and, accordingly, ineligible for the supplemental security income ("SSI") benefits for which he has applied. For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    <u>BACKGROUND</u>

Plaintiff was born in January of 1985, and is currently thirty-six years of age. He was thirty-two years old at the time of his application for benefits in January of 2017. Plaintiff stands five-foot and ten inches in height, and weighed between approximately two hundred and ten and two hundred seventy-one pounds during the relevant time period. Plaintiff is not married and currently lives with his mother, father, and brother.

In terms of education, plaintiff has attained a Bachelor's degree in film production as well as a certificate from the Culinary Institute of America. Plaintiff last worked as a tour guide and visitor center representative at a winery in California, but reportedly left that position due to social phobia, anxiety, and depression that caused him to miss too much

work.

Mentally, plaintiff alleges that he suffers from social anxiety and depression.  He has received treatment consisting of medication management from his primary care physician, and, beginning in October 2018, medication management and therapy from a mental health specialist. Plaintiff has not been hospitalized for psychiatric issues, although he has presented to hospital emergency departments on occasion complaining of panic attacks.

During the relevant period, plaintiff treated for his conditions with Dr. William Heffernan, Dr. Marilyn Markarian, and Thomas Kellner, LCSW, of Hudson Valley Mental Health.  Plaintiff has also been noted by physicians as being overweight, and has received medication related to losing weight. Plaintiff has been prescribed several medications over time including, though not limited to, fluoxetine (Prozac), alprazolam (Xanax), clonazepam, lorazepam, phentermine, and Adderall.

Plaintiff has reported that he cannot work because there are days where he is unreliable and just cannot function due to anxiety.  He experiences periods during which his anxiety makes it difficult to look people in the eye, and being around people makes him anxious because he feels like they are watching him and staring at him.  Plaintiff's increased

weight contributes to his anxiety, and although he eats healthy food, he

continues to gain weight.  He cannot multitask, cannot continue a task

when he has been interrupted, has difficulty connecting with things if he is

not interested in them, and has a poor short term memory, although his

long term memory is good.  He lives with his parents and they shop for him

now, but he helps make sure everything gets done around their house

because they are old and disabled; Plaintiff does his own self-care

independently, and uses his cell phone to research topics and learn new

things.

II.    <u>PROCEDURAL HISTORY</u>

    A.    <u>Proceedings Before the Agency</u>

Plaintiff applied for SSI payments under Title XVI of the Social

Security Act on January 31, 2017.  In support of that application, he alleged

a disability onset date of October 15, 2015, and claimed to be disabled

based on social anxiety and depression.

A hearing was conducted by video on December 7, 2018, by ALJ

Sandra R. DiMaggio Wallis, to address plaintiff's application.  ALJ Wallis

issued an unfavorable decision on February 13, 2019.  That opinion

became a final determination of the agency on June 10, 2020, when the

Social Security Appeals Council ("Appeals Council") denied plaintiff's

request for review of the ALJ's decision.

B.    The ALJ's Decision

In her decision, ALJ Wallis applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff had not engaged in substantial gainful activity during the relevant period.  At step two, ALJ Wallis found that plaintiff suffers from severe impairments that impose more than minimal limitations on his ability to perform basic work functions, including a depressive disorder, a generalized anxiety disorder, a panic disorder, and an attention deficit hyperactivity disorder ("ADHD").[2]

At step three, ALJ Wallis examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 12.04, 12.06, and 12.11.

ALJ Wallis next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following

---

[2]    In her decision, ALJ Wallis questioned whether ADHD was a medically determinable and severe impairment, noting only sporadic references to the condition in plaintiff's treatment notes.  This notwithstanding, she gave plaintiff the benefit of the doubt and included ADHD among the step two listing of severe impairments.

limitations resulting from his mental conditions:

> He is able to understand, remember and carry out simple and detailed tasks and job instructions. The claimant is able to respond appropriately to routine changes in the workplace and is capable of tolerating occasional interactions with coworkers and supervisors. He is able to work in a job that does not require interaction with the general public.

At step four, ALJ Wallis concluded that plaintiff is unable to perform his past relevant work as a tour guide. Proceeding to step five, the ALJ consulted a vocational expert regarding how plaintiff's limitations impact the occupations he could perform, and concluded based on the vocational expert's testimony that plaintiff remains able to perform available work in the national economy, citing as representative positions hand packager, kitchen helper, and cook helper. Based upon these findings, ALJ Wallis concluded that plaintiff was not disabled at the relevant times.

C.   <u>This Action</u>

Plaintiff commenced this action on August 8, 2020.[3]  In support of his challenge to the ALJ's determination, plaintiff raises several arguments, contending that (1) the RFC is not supported by substantial evidence

---

[3]     This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

because the evidence in the record – particularly plaintiff's subjective reports, upon which the ALJ was permitted to rely due to the fact that mental impairments are generally heavily subjective – shows that plaintiff has marked limitations in his abilities related to social interaction and maintaining concentration, persistence, and pace; (2) the vocational expert failed to reconcile the limitation to only occasional interaction with co-workers and supervisors with the fact that two of the identified jobs require more than occasional interactions; (3) the ALJ failed to properly apply the treating physician rule when rejecting the opinions of the two treating physicians in favor of the opinions from the non-examining state agency medical consultant and the consultative examiner; (4) the ALJ erred in failing to recontact plaintiff's treating physicians; and (5) the ALJ erred when assessing whether to accept plaintiff's subjective reports by relying on noncompliance with treatment because she failed to consider the reasons for any such noncompliance and ignored evidence that plaintiff had been consistently seeing his primary care physician for mental health treatment.  Dkt. No. 11.

Oral argument was conducted in this matter, by telephone, on December 8, 2021, at which time decision was reserved.

III.   <u>DISCUSSION</u>

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v.*

*Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must

be "more than a mere scintilla" of evidence scattered throughout the

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

  B. <u>Disability Determination: The Five-Step Evaluation Process</u>

   The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.

1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

1.    ALJ Wallis' Evaluation of the Opinion Evidence

As an initial matter, I recognize that this case is subject to the former regulations related to the weighing of medical opinion evidence and the treating physician rule, based on the filing date of plaintiff's application for

benefits.  Under the former regulations, an ALJ was required to consider

whether a treating physician's opinion was entitled to controlling weight, or,

if not, what degree of weight to which it was otherwise entitled by

considering factors such as (1) the frequency, length, nature, and extent of

treatment, (2) the amount of medical evidence supporting the opinion, (3)

the consistency of the opinion with the remaining medical evidence, and (4)

whether the physician is a specialist.  *Estrella v. Berryhill*, 925 F.3d 90, 95-

96 (2d Cir. 2019).  Although under the former regulations, the ALJ was

required to explicitly consider all of these factors, the failure to do so would

be deemed harmless if a "searching review of the record assure[d] [the

court] that the substance of the treating physician rule was not traversed."

*Estrella*, 925 F.3d at 95-96.

### a. Dr. Heffernan

On November 28, 2018, Dr. William Heffernan, who has treated

plaintiff for approximately twenty years, provided a medical source

statement primarily addressing plaintiff's physical limitations due to his

obesity.  Administrative Transcript ("AT") at 410-13.[4]  Plaintiff argues that

the ALJ erred in affording no weight to the opinion of Dr. Heffernan

---

[4]     The Administrative Transcript is included in the court's records as Docket
Number 10, and will be cited as "AT __."

because (1) the ALJ mistakenly stated that Dr. Heffernan had not treated plaintiff for his mental health impairments until 2018, (2) the ALJ did not consider most of the required factors when evaluating Dr. Heffernan's opinion, and (3) the fact that Dr. Heffernan treated plaintiff multiple times is itself enough reason to show that the ALJ should have afforded his opinion more weight.  Dkt. No. 11, at 23-24.

The ALJ attributed no weight to Dr. Heffernan's opinion, noting that his opinion was related to the effects of plaintiff's obesity and primarily covered limitations in his physical functioning due to obesity.  AT 16-17.  A review of Dr. Heffernan's opinion confirms that it was indeed primarily related to the physical effects of plaintiff's obesity rather than his depression and anxiety.  AT 410-13.  The only diagnosis Dr. Heffernan listed in the opinion form was "overweight," and the only mention of depression and anxiety was in response to a question of whether those conditions affected plaintiff's *physical* condition.  AT 410. Dr. Heffernan then opined, in relevant part, that plaintiff would likely be off-task 25% or more of the workday, that he would have an increase in "symptoms" in response to stress, that stress reaction could be triggered by "many things," and that plaintiff would likely be absent from work more than four days per month.  AT 413.

As to plaintiff's first argument, the ALJ never stated that Dr. Heffernan had not been treating plaintiff for his mental health impairments prior to 2018.  To the contrary, the reference apparently relied upon by plaintiff relates to a finding that he did not seek treatment from a *mental health specialist* prior to October 2018.  The ALJ noted that, before that time, plaintiff was seen by Dr. Heffernan, "who treated him through the use of psychotropic medications."  AT 21.  The ALJ therefore properly considered the nature of the treatment relationship with Dr. Heffernan and did not misinterpret or misstate the evidence related to that relationship.

As to plaintiff's second argument, I find that the ALJ adequately complied with the former treating physician rule.  Although the ALJ dismissed Dr. Heffernan's opinion in large part based on the fact it represented an assessment of plaintiff's physical functioning, she also provided a rationale to support her rejection of the opined limitations related to off-task time, stress response, and absences.  Specifically, the ALJ discussed the extent and nature of the treatment relationship and Dr. Heffernan's specialty of practice as a family physician, and the fact that he was not a specialist in mental health care.  AT 21.   ALJ Wallis also discussed Dr. Heffernan's own treatment notes, as well as the treatment notes of other sources, and explained how those treatment notes did not

14

document more restrictive mental functional limitations.  AT 21-22.

Plaintiff's argument that the ALJ failed to discuss most of the relevant

factors is therefore clearly contradicted by the ALJ's decision.

As to plaintiff's remaining argument, even under the former

regulations, an ALJ was not required to defer to a source's opinion merely

because that source treated the claimant, whereas a non-examining or

examining source saw the claimant fewer times, or not at all.  Such an

argument is expressly contradictory to the regulations themselves, which

plainly require consideration of other factors beyond the treating

relationship.  An ALJ is entitled to afford less weight to the opinion of a

treating physician where, as here, she finds that the treating physician's

opinion is not consistent with or supported by the relevant evidence, or is

otherwise not deserving of greater weight.  *See Kevin F. v. Comm'r of Soc.

Sec.*, 18-CV-1454, 2020 WL 247323, at *9 (N.D.N.Y. Jan. 16, 2020)

(Baxter, M.J.) ("The law is clear that notwithstanding the 'treating physician

rule,' the ALJ may elect to give the treating physicians' opinions less weight

if the ALJ gave good reasons for doing so."); *Herzog v. Astrue*, 11-CV-

1108, 2012 WL 5334756, at *3 (N.D.N.Y. Oct. 26, 2012) (Suddaby, J.)

(finding that, "[w]here, as here, the treating physician's opinion is not

supported by, or consistent with, other evidence in the record, the ALJ is

entitled to accord that opinion less than controlling weight, and may instead rely on the opinions of consultative examiners") (citing *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011)).

The ALJ was reasonable in assessing the evidence as being inconsistent with the relevant limitations in Dr. Heffernan's opinion.  Dr. Heffernan's own treatment notes fail to document mental status findings, with the exception of a few scattered notations to the effect that plaintiff appeared anxious on examination.  AT 231 (observing that plaintiff was slightly anxious and quiet), 239 (observing that plaintiff appeared anxious). During one examination, plaintiff was observed to be slightly quiet, but otherwise not anxious or depressed.  AT 373.  At other times, he was noted to be in no acute distress and was alert and oriented.  AT 379, 381.  When he began treatment with a mental health specialist in October 2018, subsequent mental status examinations indicate normal presentations related to areas including psychomotor activity, attention, memory, thought process and eye contact, although he was noted to have an anxious mood. AT 407, 420-21, 425, 428.  At an examination with Dr. Heffernan in November 2018, plaintiff was observed to be talkative, though slightly depressed and slightly anxious.  AT 359.  His therapist noted in November and December of 2018 that he presented as mentally stable and was not

taking his medications as prescribed.  AT424, 427.  Notations that plaintiff appeared anxious on a handful of occasions simply do not support the disabling limitations related to being on-task, coping with stress, and attending on a regular basis that were opined by Dr. Heffernan.  Similarly, the consultative examination by Dr. Stack revealed that plaintiff was cooperative, had appropriate eye contact, a coherent and goal directed thought processes, intact attention, concentration and memory, good insight, and fair judgment.  AT 250-51.

Because the ALJ properly considered the relevant factors under the treating physician rule and because substantial evidence supports the ALJ's decision to afford no weight to Dr. Heffernan's opinion, I reject plaintiff's arguments challenging that determination.

### b. Dr. Patrinellis

Plaintiff also argues that the ALJ failed to properly apply the treating physician rule when weighing the opinions from Dr. Patrinellis, maintaining that those opinions provide "longitudinal evidence of Plaintiff's lifelong mental impairments" and the ALJ failed to analyze "many" of the required factors under the treating physician rule.  Plaintiff's argument is unpersuasive for a number of reasons.

The ALJ afforded no weight to the various opinions of Dr. Patrinellis,

finding that they were of minimal probative value because they were intended to provide only temporary work excuses, were issued prior to the alleged onset date, were issued by a source who is not a specialist in mental health treatment, and did not contain any opinion regarding specific work-related functions that were limited.  AT 20-21.  Additionally, the ALJ discussed the record evidence, and how it was inconsistent with disabling limitations.

As an initial matter, I agree with the Commissioner that the majority of the statements made by Dr. Patrinellis do not constitute medical opinions, but are instead general opinions that plaintiff is temporarily unable to work, a determination that is reserved to the Commissioner, and thus those opinions are entitled to no special deference.  AT 273-74, 287, 290, 301. *See Jackson L. v. Comm'r of Soc. Sec.*, 19-CV-0786, 2020 WL 3077051, at *10 (N.D.N.Y. June 10, 2020) (Baxter, M.J.) ("The ALJ was correct in her statement that the ultimate issue of whether one can perform 'regular or continuing work' and is, therefore, not disabled, is a determination that is reserved to the Commissioner.").  Notably, none of those opinions contain any indication of what functional limitations result from plaintiff's impairments.  The closest indication of a functional limitation contained in those opinions is a notation in a form from July 2014, to the effect that

plaintiff would experience episodic flare-ups two times per week each of

which would last two hours.  AT 292.  However, a subsequent form issued

in January 2015, presumably also from Dr. Patrinellis, indicated that plaintiff

would not experience any episodic flare-ups.[5]  AT 301.  There is therefore

no evidence to suggest that Dr. Patrinellis' opinions should have been

interpreted as suggesting that plaintiff would experience episodic flare-ups

during the relevant time period.

I note, moreover, that the ALJ is correct in noting that those opinions

all predate plaintiff's alleged onset date of October 15, 2015, and they are

all explicitly limited to a specific time period prior to that alleged onset date.

AT 287 (indicating that plaintiff must remain out of work until August 15,

2014), 290 (indicating that the probable duration of plaintiff's need for

treatment was "one month from 7/1/2014"), 299 (indicating that plaintiff

would be ready to return to work one week from June 6, 2015).  Those

opinions therefore do not provide any insights regarding plaintiff's

functioning during the relevant time period, or indeed of any of his ongoing

limitations.  As a result, the ALJ's finding that those opinions were of little

probative value to the consideration of plaintiff's functioning during the

---

[5]     The signatures on the various forms attributed to Dr. Patrinellis are essentially illegible.

relevant period represents a reasonable interpretation of the evidence.

Additionally, it should be noted that the ALJ did not reject those opinions solely because they predated the relevant time period.  She considered the relevant factors under the treating physician rule in addition to the above valid critiques of Dr. Patrinellis' statements, noting the treating relationship, Dr. Patrinellis' lack of specialty in mental health treatment, and discussing the evidence that showed that his assessments were not consistent with or supported by the record evidence.  *See Andrea K. v. Comm'r of Soc. Sec.*, 18-CV-1448, 2021 WL 1224049, at *12 (N.D.N.Y. Mar. 31, 2021) (Hummel, M.J.) (noting that a treating physician's opinion "need not be rejected solely because it predates the relevant time period" because the relevant assessment is whether the opinion is consistent with and supported by the evidence).  For the reasons that were already discussed related to Dr. Heffernan's opinion, the ALJ's discussion of how these opinions of disability were inconsistent with the record evidence as a whole provides sufficient explanation from which I can determine that her finding was supported by substantial evidence.

Because the ALJ properly considered the relevant factors under the treating physician rule and because substantial evidence supports her decision to afford no weight to Dr. Patrinellis' opinions, I reject plaintiff's

arguments on this matter.

  c. <u>Reliance on the Opinions of Examining and Non-Examining Sources</u>

  The ALJ afforded substantial weight to the opinions of non-examining state agency psychologist consultant Dr. Ferrin and consultative examiner Dr. Stack, with particular "deference" to Dr. Ferrin's opinion because it was more specific in terms of individual functional limitations.  AT 23.  The ALJ found that the common elements of these two opinions were "clearly more consistent with the nature and severity of the claimant's condition – including the overall lack of corroborating findings to greater limitations – as revealed by treatment notes from, primarily, Dr. Heffernan, as well as Dr. Markarian." *Id.*  Plaintiff does not elaborate on his contention that it was error for the ALJ to rely on those opinions, beyond asserting that the ALJ should have relied instead on the opinions of Dr. Heffernan and Dr. Petrinells – arguments that have already been rejected – and that the ALJ should have found greater limitations based on plaintiff's subjective reports.

  As to this first argument, as was already addressed previously, the ALJ provided sufficient reasons for declining to rely on the treating physicians' opinions in this case.  Moreover, there is nothing legally improper in an ALJ's reliance on opinions from examining or non-examining sources where those opinions are consistent with the record as a whole.

*See Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199-200 (2d Cir. 2010) (acknowledging that "[t]he ALJ is, of course, entitled to credit the opinions of consulting physicians," so long as the ALJ's resolution of contradictions in the medical record are not arbitrary).

In May 2017, Dr. Stack opined that plaintiff has no limitation in his abilities to understand, remember or apply simple directions and instructions, maintain personal hygiene and appropriate attire, and have awareness of normal hazards and take appropriate precautions; he has mild limitation in his abilities to use reason and judgment to make work related decisions; and he has moderate limitations in his abilities to understand, remember and apply complex directions and instructions, interact adequately with supervisors, coworkers and the public, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, and regulate his emotions, control his behavior and maintain his well-being.  AT 252.

Also in May 2017, Dr. Ferrin opined that plaintiff would be moderately limited in his abilities to work in coordination with or in proximity to others without being distracted by them, interact appropriately with the general public, and respond appropriately to changes in the work setting.  AT 66-68.  Overall, Dr. Ferrin opined that, based on these limitations, plaintiff

retains the ability to perform simple and complex tasks independently, maintain a schedule, manage routine or superficial interactions with coworkers or supervisors, and maintain a competitive work pace.  AT 68.

I find no error in the ALJ's conclusion that these opinions are consistent with the evidence in the record and supported by the findings on Dr. Stack's examination in particular, which, as was discussed previously, revealed very little mental functional abnormalities other than a notation that plaintiff appeared anxious.  AT 249-51.  Plaintiff reported at that examination that he performs many daily activities indicative of the level of functioning indicated by these opinions, including an intact ability to perform self-care, cook, shop, drive, take public transportation, socialize with family, and work on art projects involving photography and video editing.  AT 252. Even to the extent that a claimant's subjective reports are particularly important in cases involving mental impairments, the medical treatment notes in the record do not contain significant reports of disabling symptoms or functional problems to plaintiff's providers, but rather merely note that plaintiff experiences symptoms such as anxiety, irritability, and sleep difficulties.  This fact, combined with the lack of objective findings to corroborate greater limitations, supports the ALJ's decision to afford weight to the opinions of Dr. Stack and Dr. Ferrin that indicate no more than

moderate limitations.  *See Crumedy v. Comm'r of Soc. Sec.*, 16-CV-1261, 2017 WL 4480184, at *5 (N.D.N.Y. Oct. 6, 2017) (Suddaby, C.J.) (noting that "moderate mental limitations do not necessarily indicate disabling functional restrictions that would prevent a claimant from performing the basic mental demands required for unskilled work") (collecting cases).

As to plaintiff's second argument, the ALJ did not err in declining to accept all of plaintiff's subjective reports, as will be discussed in greater detail below.  Plaintiff's contention that the ALJ should have found marked limitations in the areas of social functioning and maintaining concentration, persistence, and pace is based almost wholly on his own subjective reports.  However, because the ALJ appropriately found those subjective reports were inconsistent with the medical and other evidence of record, and because the opinion evidence on which the ALJ appropriately relied shows at most moderate limitations, I find no error in the ALJ's finding of moderate limitations in those two areas when evaluating plaintiff's mental impairments using the regulatorily prescribed psychiatric review technique.

Based on the foregoing, I reject plaintiff's arguments on this issue.

### d.  ALJ's Obligation to Recontact Treating Physicians

Plaintiff also argues that the ALJ should have obtained clarification from his treating sources regarding his work-related mental health

limitations.  Dkt. No. 11, at 27-28.  "The duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings"; "[w]here the record before the ALJ is complete enough to form a determination as to plaintiff's disability, the ALJ is not required to recontact a medical source."  *Ismet G. v. Saul*, 19-CV-1175, 2021 WL 964209, at *6 (N.D.N.Y. Mar. 15, 2021) (Suddaby, C.J.).

I find that the ALJ had no obligation to recontact either Dr. Heffernan or Dr. Patrinellis.  As to Dr. Patrinellis, he did not treat plaintiff during the relevant period – which, as argued by the Commissioner at oral argument, began on the date on which plaintiff filed his application, given that date is the first on which he could be entitled to benefits – , and his most recent opinion (from mid-2015) indicated that plaintiff was able to return to work after a week-long absence.  AT 301.  As to the implied argument that the ALJ should have obtained an opinion from Dr. Heffernan specifically regarding plaintiff's mental functioning rather than merely rejecting the opinion provided that addressed primarily physical limitations, there was no duty on the part of the ALJ to recontact for two reasons.  First, and most importantly, there is no gap in the record that would have prevented the ALJ from making a reasonable assessment of plaintiff's mental functioning, and Dr. Heffernan's opinion is not so unclear as to require additional

elaboration.  The record contained years' worth of treatment notes from Dr.

Heffernan, as well as treatment notes related to his more recent care with

mental health specialists, and the ALJ also had the benefit of a consultative

examination regarding plaintiff's mental functioning.  *See Rusin v. Berryhill*,

726 F. App'x 837, 839 (2d Cir. 2018) (finding the ALJ was under no

obligation to recontact the treating physician where there were no obvious

gaps in the administrative record and the ALJ possessed a complete

medical history).  Second, regardless of the regulatory duty to recontact in

certain situations, the regulations also clearly specify that plaintiff has the

burden to produce evidence in support of his claim, and there is no

explanation as to whether plaintiff or his representative made any effort to

obtain an opinion specifically related to mental functioning from Dr.

Heffernan, or that he alerted the ALJ to the purported need for additional

opinion evidence from Dr. Heffernan.  This is not a case in which a treating

physician statement was not provided; rather, plaintiff himself submitted an

opinion from Dr. Heffernan.  Although an ALJ is charged with an affirmative

duty to develop a complete record, there is no indication that the ALJ

shirked that duty here, particularly as plaintiff made no indication that Dr.

Heffernan's opinion or the record was inadequate until after the proffered

opinion was found by the ALJ to be entitled to no weight.  *See* AT 36-37 (in

which plaintiff's representative at the hearing noted that he would submit "a

physical medical source statement from Dr. Heffernan" received from

plaintiff the day of the hearing and requested that the record be held open

only for new records from Hudson Valley Mental Health that had been

requested but not yet received).

Based on the foregoing, I find that there was no requirement for the

ALJ to further develop the record, and reject plaintiff's argument to the

contrary.

### 2.   ALJ Wallis' Step Five Finding

Plaintiff additionally contends that, notwithstanding whether there are

any alleged errors in the ALJ's findings based on the issues discussed

above, the ALJ's limitation for occasional contact with coworkers and

supervisors is inconsistent with the job requirements of two of the positions

identified by the vocational expert.  Dkt. No. 11, at 19-20.  Specifically,

plaintiff argues that the job of kitchen helper requires communication with

other workers 46% of the workday, while the job of cook helper requires

communication with other workers 58% of the workday, both of which,

plaintiff argues, constitutes more than "occasional" interaction that would

conflict with the RFC.  *Id.*

I need not determine whether plaintiff's argument is correct because,

even if it is, any error in the vocational expert's failure to reconcile the inconsistencies alleged to be present is harmless given that the third identified job, that of hand packager, does not require more than occasional communication with others according to the same source upon which the plaintiff relies,[6] and the vocational expert testified that there are 41,518 such jobs in the national economy.  AT 56.  The availability of this job alone would be sufficient to provide substantial evidence to support the ALJ's step five finding.  *See Hamilton v. Comm'r of Soc. Sec.,* 105 F. Supp. 3d 223, 229-30 (N.D.N.Y. 2015) (Suddaby, C.J.) (noting that a "'significant number' of jobs is 'fairly minimal'"); *see also Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 177-78 (W.D.N.Y. 2018) (collecting cases to support a finding that 9,000 to 10,000 or more jobs in the national economy are considered significant for the purposes of meeting the Commissioner's burden at step five); *Waldvogel v. Comm'r of Soc. Sec.*, 16-CV-0868, 2017 WL 3995590, at *13 (N.D.N.Y. Sept. 11, 2017) (Suddaby, C.J.) (finding that 13,891 jobs in the national economy constituted a significant number, but remanding on other grounds).

Plaintiff argues that the job of hand packer is also not proper because it "requires at least 50% exactness or accurateness and [at] least 50% of

---

[6]     https://occupationalinfo.org/onet/98902a.html#WORK_ACTIVITIES

the time being sure all is done," which, plaintiff asserts, is inconsistent with his abilities as demonstrated by his subjective reports.  Dkt. No. 11, at 19-20.  However, as will be discussed in more detail below, the ALJ properly declined to accept the full extent of plaintiff's subjective reports and therefore was not required to find greater limitations in his abilities related being accurate or ensuring tasks were complete.  Nor is such a specification inconsistent with the RFC, which is based upon the premise that plaintiff has the ability to understand, remember, and carry out simple and detailed tasks and job instructions and to respond appropriately to routine changes in the workplace.  AT 19.  As a result, there was no failure to reconcile the limitations presented to the vocational expert with the requirements of the job of hand packer.

Because the job of hand packer alone constitutes a significant number of available jobs to meet the ALJ's burden at step five, the ALJ's finding is supported by substantial evidence whether or not an error was committed with respect to the other identified positions.

       3.   <u>The ALJ's Evaluation of Plaintiff's Subjective Complaints</u>

In his final argument, plaintiff asserts that the ALJ erred when assessing his subjective reports of symptoms and limitations because (1) in using noncompliance with treatment as a basis for his finding, the ALJ

failed to consider the reasons for such noncompliance, such as difficulties

with insurance or side effects and/or lack of efficacy of certain medications,

and did not ask plaintiff or any treating source whether there were

additional reasons for that noncompliance, and (2) the ALJ's reliance on

the fact that plaintiff did not seek treatment from a mental health specialist

until 2018 ignores the mental health treatment he received from his family

care providers and the fact that this treatment represented a persistent

effort to obtain relief from his symptoms.  Dkt. No. 11, at 25-27.

Undeniably, an ALJ must take into account subjective complaints in

making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d),

416.929(a), (d).  However, the ALJ is not required to blindly accept the

subjective testimony of a claimant.  *Marcus v. Califano*, 615 F.2d 23, 27 (2d

Cir. 1979); *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999)

(citing *Marcus*).  If the claimant's testimony concerning the intensity,

persistence or limiting effects associated with his or her impairments is not

fully supported by clinical evidence, then the ALJ must consider additional

factors in order to assess that testimony, including (1) daily activities, (2)

location, duration, frequency and intensity of symptoms, (3) precipitating

and aggravating factors, (4) type, dosage, effectiveness and side effects of

any medications taken, (5) other treatment received, and (6) other

measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi); SSR 16-3p.

If the ALJ finds that a claimant's subjective testimony should be rejected, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above, so long as it is clear from the decision that the ALJ considered all of the evidence and that he or she provided specific reasons for his or her determination as to the intensity, persistence, and limiting effect of the claimant's symptoms.  *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision").  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

In this instance, ALJ Wallis found that plaintiff's subjective reports of limitations were not entirely consistent with the medical and other evidence in the record, including the opinion evidence, the fact that plaintiff did not seek treatment from a mental health specialist until October 2018 – although he did receive treatment before that time from his family physicians in the form of medications – , and the fact that plaintiff had a history of noncompliance with prescribed treatment .  AT 20-23.  The ALJ also discussed plaintiff's daily activities, citing reports that he could drive, take public transportation, manage finances, perform basic household chores, perform self-care, prepare meals, and engage in hobbies including researching topics on his phone, photography, and video editing.  AT 18-19.

As to the ALJ's reliance on the evidence that plaintiff was at times noncompliant with prescribed treatment, Social Security Ruling ("SSR") 16-3p provides that an ALJ may find that the alleged intensity and persistence of a claimant's symptoms are inconsistent with the overall record where the individual fails to seek treatment or to follow prescribed treatment that might improve symptoms; however, in doing so, an ALJ must consider possible reasons the claimant is not compliant or has failed to seek treatment, which "may" include asking the claimant questions regarding

their reasons for being noncompliant or failing to seek treatment.  SSR 16-3p.

The record indicates that plaintiff reported to consultative examiner Dr. Stack that he had not yet sought treatment from a mental health specialist as of May 2017 because he had had a lot of difficulty with his health insurance.  AT 250.  However, there is no indication that plaintiff had difficulty with insurance approval of psychiatric medications that were prescribed by Dr. Heffernan.  In January 2017, it was noted that he had not yet started taking prescribed Prozac, though the reason for that was not documented.  AT 231. In November 2018, Dr. Heffernan noted that plaintiff again had not started taking prescribed Prozac, though again there was no documented reason for the noncompliance.  AT 359.  In November and December 2018, plaintiff's therapist noted that he was not taking Xanax as prescribed by Dr. Heffernan.  AT 424, 427.  The ALJ did not question plaintiff about the reasons for his noncompliance or his failure to seek treatment with a mental health specialist prior to October 2018.

Even if the failure to question plaintiff about the reasons for his noncompliance before relying on such noncompliance was error, I find that the ALJ still provided other valid reasons supporting his overall finding regarding plaintiff's subjective reports.  As was discussed previously, the

ALJ did not find that plaintiff failed to seek any mental health treatment prior to October 2018; rather, she expressly acknowledged the type and extent of treatment that plaintiff did receive during that time, including the fact that plaintiff received psychotropic medication during the course of his treatment with Dr. Heffernan.  AT 21.  The ALJ therefore did not fail to consider plaintiff's efforts to engage in treatment; rather, she found that the evidence documenting that treatment did not reveal either subjective or objective support for plaintiff's reports of greater limitations, an assessment that, as was discussed previously, is supported by substantial evidence. This inconsistency with the medical evidence constitutes a valid reason for declining to rely on all of plaintiff's subjective reports.

Additionally, although plaintiff has reported significant limitations related to social interaction, including in making eye contact with people or otherwise interacting, medical treatment notes generally indicate that plaintiff's eye contact is adequate and he presents fairly normally, albeit anxious.  AT 407, 421.  His reports that he has difficulties with short term memory is also inconsistent with the multiple treatment notes from plaintiff's mental health providers and Dr. Stack, who observed that plaintiff has intact recent and remote memory.  AT 251, 421.

The ALJ's discussion of reported activities of daily living that are

inconsistent with the level of limitation plaintiff otherwise reported also
provides a basis for the ALJ's finding.  Notably, although it appears plaintiff
may have been leaving his house less frequently and was not shopping in
stores by the time of the hearing – in contrast to previous reports that he
could shop for himself weekly – , he is able to take long drives by himself
and interact with people to the extent necessary to travel, as evidenced by
his testimony that he will usually drive to rural Massachusetts or New
England every few months and stay in a motel or visit a friends for a couple
days.  AT 44.  He is able to shower and dress himself, and also cooks and
helps organize the tasks that have to be done around his parents' house;
he uses his cell phone to research topics and learn new things, which helps
distract him from his anxiety and depression.  AT 49-52.  His written
function report related to his application indicates that he also feeds the
family dog and takes it for walks – a responsibility he shares with his
brother – , he performs all his self-care independently, keeps his room
clean, does his own laundry, can go outside and drive alone, socializes
with his family although he decreased his other social interactions by
choice due to social anxiety, and engages in hobbies such as photography,
video editing, reading, television, and researching on the internet.  AT 175-
82.  Those documented activities are inconsistent with plaintiff's reports

that he has difficulty concentrating or completing tasks, as well as the limitations he reports related to social anxiety.

Because the ALJ provided multiple specific and valid reasons declining to accept fully plaintiff's subjective reports of limitations, I reject plaintiff's arguments as to this issue.

IV.   <u>SUMMARY AND ORDER</u>

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge to the Commissioner's determination, I find that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 15) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be DENIED, the Commissioner's decision be AFFIRMED, and plaintiff's complaint be DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:   December 14, 2021
         Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge